**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 27, 2026**

**Christopher M. Wolpert**
**Clerk of Court**

<u>**PUBLISH**</u>

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

KATHERINE TRUJILLO,

    Plaintiff - Appellant,

v.

AMITY PLAZA, LLC; HOUSING
AUTHORITY OF THE CITY OF
LITTLETON, d/b/a South Metro
Housing Options; FRANK
MARTINEZ,

    Defendants - Appellees.

No. 25-1201

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:23-CV-01019-CMA-TPO)**
_____

Jessica McBryant (Nelson Boyle on the briefs), of Ramos Law LLC,
Northglenn, Colorado, for Plaintiff-Appellant.

Shannon M. Hurley (Ryan L. Winter and Jared R. Ellis with her on the brief),
of Hall & Evans, LLC, Denver, Colorado, for Defendants-Appellees Amity
Plaza, LLC and Housing Authority of the City of Littleton d/b/a South Metro
Housing Options.

E. Catlynne Shadakofsky (John Lebsack and Doug Poling with her on the
brief), of White & Steele, Denver, Colorado, for Defendant-Appellee Frank
Martinez.

_____

Before **EID**, **EBEL**, and **FEDERICO**, Circuit Judges.

_____

**FEDERICO**, Circuit Judge.

_____

After Katherine Trujillo was allegedly raped by Frank Martinez, one of her landlord's employees, she filed suit against both her landlord and Martinez. Trujillo sought to hold her landlord vicariously liable because, she argued, Martinez was aided by his employment in committing the rape. As such, she sought to invoke the aided-by-agency exception to the usual test for vicarious liability. But that exception is exceedingly narrow, and Trujillo has not satisfied its strict requirements. Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm the judgment entered against Trujillo.

**I**

**A**

In January 2021, Trujillo moved into Amity Plaza, LLC, an apartment owned and operated by the Housing Authority of the City of Littleton (collectively, Amity Plaza).[1] Two months later, Trujillo encountered Martinez – a maintenance worker employed by Amity Plaza – for the first time when he responded to a work order that she had submitted.

---

[1] Because this appeal comes to us on summary judgment entered against Trujillo, we recite the facts in the light most favorable to her as the non-moving party. *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

2

From there, things escalated quickly. Martinez acquired Trujillo's phone number and began to harass her through repeated calls and texts. While those calls began with Martinez inquiring about whether Trujillo could help him acquire a piece of art, they soon veered into uncomfortably personal territory. Martinez confided in Trujillo about the difficulties he had regarding his child's gender expression and sexual identity, as well as about his estrangement from his wife. He continued to do so even after Trujillo asked him to stop calling.

Eventually, Martinez's verbal harassment became physical. On one occasion, he exposed his penis and forced Trujillo to touch it. On another, Martinez pulled Trujillo onto a couch and climbed on top of her. In that instance, when Trujillo told Martinez to stop, he complied and left her apartment. But on May 3, 2021, Martinez allegedly went further and did not stop.

That day, Martinez was not supposed to be at Trujillo's apartment because she had not requested maintenance, and he was responding to a work order elsewhere. Yet after Martinez completed that work order, he went to Trujillo's apartment. The building was open to the public, so Martinez was able to enter and make his way to Trujillo's unit without using the master key he had been assigned as an Amity Plaza employee. The door to Trujillo's unit was also unlocked, so when Martinez arrived, he

was again able to enter her unit without using his master key. Once he entered, Martinez pinned Trujillo down and raped her.

## B

Trujillo filed suit against both Amity Plaza and Martinez. By the time her case reached summary judgment, three claims remained: a pair of federal Fair Housing Act (FHA) claims against Amity Plaza and Martinez, and a state sexual assault claim against Martinez alone. Amity Plaza (but not Martinez) moved for summary judgment on the FHA claims.

In deciding the motion, the district court first held that Trujillo had failed to present evidence establishing Amity Plaza was directly liable for any FHA violation. It was undisputed that Trujillo did not report Martinez to Amity Plaza until after the alleged rape, so Amity Plaza was not on notice that it needed to act until then.[2] By that time, there was no action that Amity Plaza could have taken with respect to Martinez's employment since he had already quit his job. Instead, Amity Plaza responded by offering to move Trujillo into a different apartment unit, although Trujillo declined that offer. The district court concluded that, in these circumstances, Amity Plaza was not directly liable to Trujillo.

---

[2] Before this, Amity Plaza had received a sexual harassment complaint against Martinez that was unrelated to Trujillo. After investigating, Amity Plaza was unable to substantiate the complaint.

The district court next held that Amity Plaza was not vicariously liable for Martinez's actions. The usual test for vicarious liability turns on whether an employee acted within the scope of the employment. That is, an employer is vicariously liable for employee acts within the scope of employment but not for acts outside of it. *Meyer v. Holley*, 537 U.S. 280, 285–86 (2003). However, Trujillo did not argue that Martinez was acting within the scope of his employment when he allegedly raped her. Instead, she invoked the aided-by-agency exception to the usual test, which would hold Amity Plaza vicariously liable if Martinez's employment "aided [him] in accomplishing" the rape. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998) (quoting Restatement (Second) of Agency § 219(2)(d)).

The district court determined that the exception did not apply here because Trujillo had not introduced evidence establishing a "nexus between [] Martinez's position as a maintenance worker and the harassment he perpetrated." Aplt. App. VI at 57. For these reasons, the district court granted summary judgment in favor of Amity Plaza on Trujillo's FHA claims. Then, even though Martinez did not separately move for summary judgment, the district court sua sponte granted summary judgment in his favor on the FHA claims, too. That left just Trujillo's state sexual assault claim against Martinez. Having resolved all federal claims and lacking

5

diversity jurisdiction over the remaining state claim, the district court declined supplemental jurisdiction and entered judgment against Trujillo.

In response, Trujillo moved under Federal Rule of Civil Procedure 59(e) for reconsideration of the district court's sua sponte summary judgment in favor of Martinez. The district court acknowledged that it had failed to provide Trujillo the notice required by Rule 56(f) before entering sua sponte summary judgment, but it denied Trujillo's motion because it found that she had suffered no prejudice from its prior ruling. Trujillo timely appealed.

On appeal, Trujillo presents three issues. Primarily, Trujillo challenges the district court's grant of summary judgment to Amity Plaza on her FHA claims. On that point, Trujillo does not contest the district court's holding on direct liability, arguing only that the district court misapplied the aided-by-agency exception to reject vicarious liability. Next, she contends that the district court was wrong to sua sponte grant summary judgment for Martinez. And finally, she asserts that the district court should not have declined supplemental jurisdiction. We discuss and resolve each of these issues in turn.

## II

We start with vicarious liability. As the parties have presented this issue on appeal, we must answer only a narrow question. Vicarious liability

6

is a form of no-fault liability, so we are not called upon to assess (and do not assess) Amity Plaza's blameworthiness or culpability. *See Meyer*, 537 U.S. at 282. There is also no dispute that Martinez was acting outside the scope of his employment – the traditional measure of vicarious liability – when he allegedly raped Trujillo. So, we take it as a given that Martinez acted upon his own personal motives when he entered Trujillo's apartment. The only question we confront is whether the aided-by-agency exception applies to hold Amity Plaza strictly liable for Martinez's actions.

Because this question comes to us on summary judgment, we review the district court's decision de novo, employing the same test that applies in district court. *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 906 F.3d 926, 930 (10th Cir. 2018). Under this standard, "[w]e will affirm a grant of summary judgment if there is no genuine dispute of material fact and the prevailing party is entitled to judgment under the law." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008); *accord* Fed. R. Civ. P. 56(a).

As best we can tell, neither the Supreme Court nor any of our sister circuits have addressed how, or even if, the aided-by-agency exception applies to FHA claims. We thus begin our analysis by discussing whether and how the aided-by-agency exception applies to FHA claims. We conclude that the FHA recognizes the aided-by-agency exception and sketch out a high-level framework for applying the exception. Then, applying that

7

framework, we determine that Trujillo has failed to create a genuine dispute over any material fact that could trigger vicarious liability under the exception.[3]

## A

Although the FHA does not expressly say so, "it is well established that the [FHA] provides for vicarious liability" because it incorporates the "traditional" and "ordinary" rules of agency. *Meyer*, 537 U.S. at 285, 287. These traditional rules make up a body of law that this court has referred to as the "general common law of agency." *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1259 n.6 (10th Cir. 2020) (quoting *Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 740–41 (1989)). The general common law is federal, so it takes its shape from the "body of case law developed over time" by the federal courts as they apply agency principles to claims arising under federal statutes. *Ellerth*, 524 U.S. at 754–55. Other sources like state law and the Restatements can be instructive. *Id.* at 755;

---

[3] Amity Plaza suggests that Trujillo may have forfeited some of her arguments on the aided-by-agency exception. To the extent Amity Plaza is correct, we nonetheless exercise our "discretion to consider [those] arguments." *Ave. Cap. Mgmt. II, L.P. v. Schaden*, 843 F.3d 876, 886 (10th Cir. 2016).

*see also Alfaro-Huitron*, 982 F.3d at 1259 n.6. However, these other sources are not binding on us.[4] *Ellerth*, 524 U.S. at 754–55.

The application of general common law means that we do not start with a clean slate when determining whether the FHA recognizes the aided-by-agency exception. That is because other federal statutes, like Title VII, also apply the general common law of agency. *See id.* at 754. And in the Title VII context, the Supreme Court has previously held that the general common law recognizes the aided-by-agency exception. *Id.* at 758 (quoting Restatement (Second) of Agency § 219(2)(d)); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 802 (1998). Since the same agency principles apply to both Title VII and the FHA, the aided-by-agency exception also applies to FHA claims.

Of course, it is one matter to decide that the aided-by-agency exception is available under the FHA. It is another matter, and a much more difficult one given the scarce caselaw, to determine how the exception

---

[4] The parties spill much ink arguing over federal housing regulations on vicarious liability. With one exception addressed later in this opinion, there is no need for us to grapple with or further discuss these regulations. That is because the regulations state only the general principle that traditional agency rules apply in the FHA context. *See* 24 C.F.R. § 100.7(b); 81 Fed. Reg. 63054, 63072 (Sept. 14, 2016) (adopting "well-established principles of agency law"). The Supreme Court already made that point clear in *Meyer*, 537 U.S. at 285.

9

applies to a given set of facts. We therefore start from the fundamental premise, drawn from an emerging consensus among the state courts, that aided-by-agency is a narrow and disfavored exception to the usual rule limiting vicarious liability to acts within the scope of employment.

At a high level, the aided-by-agency exception triggers vicarious liability whenever an employee "was aided in accomplishing the tort by the existence of the [employment] relation." *Ellerth*, 524 U.S. at 759 (citation omitted). But ever since the Supreme Court adopted the exception in *Ellerth*, state courts have expressed concern about the exception's potentially broad reach. As the Iowa Supreme Court observed, "[a]n argument can almost always be made at *some* level of generality that an employee's tortious conduct was 'aided' by the employee's job." *Martin v. Tovar*, 991 N.W.2d 760, 768 (Iowa 2023). For that reason, the Alaska and New Mexico Supreme Courts noted that the doctrine "risks an unjustified expansion of employer tort liability for acts of employees." *Ayuluk v. Red Oaks Assisted Living, Inc.*, 201 P.3d 1183, 1199 (Alaska 2009); *Spurlock v. Townes*, 368 P.3d 1213, 1217 (N.M. 2016) (quoting *Ayuluk*). And the Vermont Supreme Court expressed concern that a broad view of the doctrine could "make[] a principal liable for all intentional torts of an agent in all circumstances." *Doe v. Forrest*, 853 A.2d 48, 60 (Vt. 2004).

10

Some states have responded to these concerns by rejecting the aided-by-agency exception. The Michigan Supreme Court declined to adopt the exception altogether out of a "recogni[tion] that were [it] to adopt the exception [it] would potentially be subjecting employers to strict liability." *Zsigo v. Hurley Med. Ctr.*, 716 N.W.2d 220, 226 (Mich. 2006). And the Iowa Supreme Court cabined the exception to hostile work environment claims alone. *Martin*, 991 N.W.2d at 766, 768. The American Law Institute, too, has now rejected the exception after initially endorsing it in the Restatement (Second) of Agency. *See* Restatement (Third) of Agency § 7.08 cmt. b ("This Restatement does not include 'aided in accomplishing' as a distinct basis for an employer's . . . vicarious liability.").[5]

Unlike the state courts canvassed above, we do not have the option of rejecting the aided-by-agency exception because the Supreme Court has incorporated the exception into federal law via the general common law of agency. It is for the Supreme Court, not us, to decide whether to eliminate

---

[5] In addition to deleting the aided-by-agency exception in the Third Restatement, the American Law Institute also appended a note to § 219 of the Second Restatement. The note indicates that the exception "was not approved by [Institute] membership and thus did not represent the position of the [Institute]." Restatement (Second) of Agency § 219. It is not completely clear that this note is accurate. *See generally* Danielle Dascher, *"Restating" the Record: Evaluating ALI's Aided-by-Agency Disclaimer*, 117 Law Libr. J. 108 (2025). Regardless, what is clear is that the Institute has now repudiated the aided-by-agency exception.

11

the aided-by-agency exception in response to criticisms and concerns about the doctrine. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989). But our survey of the authorities above illustrates the growing trend towards applying the aided-by-agency exception narrowly and cautiously.

To that end, we recognize that the bar for triggering the exception is high. Indeed, the Supreme Court acknowledged the need for strict limits even as it adopted the aided-by-agency exception. *See Ellerth*, 524 U.S. at 760. For one, the Supreme Court "require[d] the existence of something more than the employment relation itself" to trigger the exception. *Id.* And it held the mere fact that employment created "[p]roximity and regular contact," or created "a captive pool of potential victims," was not enough. *Id.* So, at least in the Title VII context, the exception usually creates vicarious liability only when supervisors exercise their supervisory authority over an employee. *Id.* at 760–63.

While the concept of supervisory authority over a subordinate employee does not translate neatly into the housing context under the FHA, the more general principle – that the exercise of authority is crucial to triggering the exception – does translate. Many of the state courts that have adopted the exception have emphasized the importance of authority to the aided-by-agency analysis. As an example, when the Delaware Supreme

12

Court applied the exception to police departments, it did so in large part because police officers hold "potent coercive power" over members of the community. *Sherman v. State Dep't of Pub. Safety*, 190 A.3d 148, 181 (Del. 2018). The Vermont Supreme Court likewise applied the exception to law enforcement agencies due to the "extraordinary power that a law enforcement officer has over a citizen." *Forrest*, 853 A.2d at 61. And tellingly, it declined to extend the exception to hold churches liable for the actions of their pastors because it concluded that pastors did not possess similarly extraordinary power. *Doe v. Newbury Bible Church*, 933 A.2d 196, 198–99 (Vt. 2007).

Other states have expressly made the presence of authority an element of the aided-by-agency exception. In Alaska, the exception applies only in "cases where an employee has by reason of his employment substantial power or authority to control important elements of a vulnerable tort victim's life or livelihood." *Ayuluk*, 201 P.3d at 1199. And New Mexico has the same rule. *Spurlock*, 368 P.3d at 1217 (quoting *Ayuluk*).

All that said, authority is not the be-all-end-all of the doctrine. The aided-by-agency exception can also apply when an employee takes advantage of "some special mechanism afforded to him by his employment" when committing a tort. *Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 786 (3d Cir. 2020). For instance, the exception applies "where a telegraph

operator sends false messages" or where "the manager of a store . . . is enabled to cheat the customers because of his position." Restatement (Second) of Agency § 219 cmt. e.[6] The telegraph operator and store manager do not have any meaningful authority over the victims in those examples, but their employment gives them special privileges or access that enable their torts.

Other circuits have invoked this special privilege rule to trigger the aided-by-agency exception. For instance, the First Circuit applied the exception when a hotel manager used his master key to enter the plaintiff's room and rape her. *Costos v. Coconut Island Corp.*, 137 F.3d 46, 50 (1st Cir. 1998). And the Eighth Circuit applied the exception when a police chief "used a government-issued computer and official credentials to obtain [a plaintiff]'s private information." *Orduno v. Pietrzak*, 932 F.3d 710, 732 (8th Cir. 2019).

The key to this special privilege rule is that the privilege or access must be "unique" and not available to the public writ large. *Iverson v. NPC Int'l, Inc.*, 801 N.W.2d 275, 279 (S.D. 2011). Or put differently, to trigger

---

[6] The Supreme Court adopted the Second Restatement's formulation of the aided-by-agency exception. *Ellerth*, 524 U.S. at 758–59. Therefore, we cite to it as persuasive authority even though, as explained above, the American Law Institute has since abandoned the exception. *See* Restatement (Third) of Agency § 7.08 cmt. b.

the aided-by-agency exception, it must be that the employee "could not have [committed a tort] but for his official position" and the attendant special privilege. *Orduno*, 932 F.3d at 718. In *Costos*, for instance, the hotel manager's master key was unique to his position and not available to the typical member of the public. And in *Orduno*, the average citizen would not be able to acquire the log-in credentials that the police chief used.

One final note. The exception applies only when an employee is "*aided* in accomplishing the tort by" his employment. Restatement (Second) of Agency § 219(2)(d) (emphasis added). This means the mere presence of some sort of authority or special privilege is not enough on its own to trigger the exception. The employee needs to actually use and be *aided* by that authority or privilege when committing a tort. In other words, there must be some causal nexus between the authority or privilege and the tort.

***

To summarize, the general common law of agency establishes that the aided-by-agency exception applies in two situations. First, the exception can apply when an employee exercises significant authority over a tort victim by virtue of his employment. Second, the exception can apply when an employee gains a special privilege or access that is not available to the general public. In both circumstances, the employee must use the authority

15

or privilege to commit the tort. Otherwise, the employment did not "aid" the commission of the tort.

We acknowledge that these principles may not flesh out a complete framework for the aided-by-agency exception, and difficult line drawing questions likely remain to be answered. How great must an employee's authority be, and how strong must the causal nexus be, to trigger the exception? We do not attempt to draw all those lines here in this appeal. As we explain shortly, wherever the lines may be, Trujillo's claims still fail to satisfy the aided-by-agency exception.

## B

Having established a framework for the aided-by-agency exception, we now proceed to apply that framework to Trujillo's claims.

The record does not indicate that Martinez had any meaningful authority over Trujillo. As a maintenance worker, Martinez did not control Trujillo's lease or rent. Nor does the record suggest that Martinez could have coerced Trujillo by withholding maintenance services. Although Martinez could have personally refused to respond to Trujillo's work orders,

Amity Plaza employed other maintenance workers that it could have dispatched to handle Trujillo's requests.[7]

However, Martinez did possess a special privilege and access not available to the public at large: a master key. The problem for Trujillo's claims is that there is no evidence Martinez used that master key the day he allegedly raped Trujillo. As Trujillo's counsel conceded at oral argument, the building that Trujillo lived in was open to the public, so Martinez did not need any special access to enter the building. And as Trujillo herself testified, her door was unlocked when Martinez entered, so Martinez did not use his master key there, either. Given that Martinez never used his master key, there is no causal nexus between the special privilege of his employment and his alleged rape of Trujillo; the master key did not "aid" Martinez in committing the rape.

Trujillo points to two other facts that she claims can trigger the aided-by-agency exception. First, she notes that Martinez used a work phone to

---

[7] Pointing to federal housing regulations, Trujillo argues "a housing provider's agent" necessarily "holds a position of power and authority over the victimized resident . . . , regardless of the agent's specific duties." Op. Br. at 39 (quoting 81 Fed. Reg. at 63072). However, the quoted regulation specifically addresses agents who, unlike Martinez, have "power and control over the terms or conditions of the housing environment." 81 Fed. Reg. at 63072. The regulation also recognizes that "[a]gency law must be applied to the specific facts at issue." *Id.* So, regardless of whether the regulation receives any level of deference, it does not compel a different result here.

call and text her. But a work phone is not a special privilege of Martinez's employment because anyone can get a phone. Regardless, the fact that Martinez was able to call and text with his work phone shows only that the work phone helped facilitate "[p]roximity and regular contact" with Trujillo, which is not enough to trigger the exception. *Ellerth*, 524 U.S. at 760.

Second, Trujillo observes that Martinez was wearing his work uniform the day of the alleged rape. However, nothing in the record indicates that the uniform played any role in the rape. It did not appear to facilitate Martinez's entry into Trujillo's building, nor did it appear to lower Trujillo's guard.

Ultimately, the record does not indicate that Martinez possessed any authority over Trujillo, nor that any special privilege of his employment aided him in committing the alleged rape. Trujillo has therefore failed to create any genuine disputes of material fact regarding the aided-by-agency exception, and we affirm the summary judgment in favor of Amity Plaza.

## III

With that, we turn to the district court's sua sponte grant of summary judgment on the FHA claims in favor of Martinez. Since Trujillo raised this issue to the district court as a Rule 59(e) motion to alter or amend the judgment, we review for abuse of discretion. *Headwaters Res., Inc. v. Ill. Union Ins. Co.*, 770 F.3d 885, 899 (10th Cir. 2014). As such, we will not

18

disturb the district court's Rule 59(e) ruling unless we have "a definite and firm conviction that the [district] court made a clear error of judgment or exceeded the bounds of permissible choice." *Id.* (citation omitted).

Rule 56(f) supplies the substantive standards for assessing sua sponte grants of summary judgment. Under that rule, a district court must "giv[e] notice and a reasonable time to respond" before acting on a sua sponte basis. Fed. R. Civ. P. 56(f). But not every failure of notice requires the district court to revisit its judgment. "[I]f the losing party suffered no prejudice from the lack of notice," there is no reason to amend the judgment. *A.M. v. Holmes*, 830 F.3d 1123, 1137 (10th Cir. 2016) (quoting *Johnson v. Weld County*, 594 F.3d 1202, 1214 (10th Cir. 2010)). In this appeal, Trujillo did not attempt to develop any prejudice argument until her reply brief. She has therefore waived such argument, and we can affirm on that basis alone. *See In re Motor Fuel Temperature Sales Pracs. Litig.*, 872 F.3d 1094, 1112 & n.5 (10th Cir. 2017).

The only argument that Trujillo properly advances is that we should reverse the grant of summary judgment to Martinez "for the same reasons that the district court erred in granting summary judgment" to Amity Plaza. Op. Br. at 54. However, we now hold that the district court did not err in granting summary judgment to Amity Plaza. Accordingly, we also affirm summary judgment as to Martinez.

19

## IV

Finally, we address supplemental jurisdiction. When a district court "has dismissed all claims over which it has original jurisdiction," it may and usually should decline supplemental jurisdiction over the remaining state claims. *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (quoting 28 U.S.C. § 1367(c)(3)). We review decisions to decline supplemental jurisdiction in such circumstances for abuse of discretion. *Id.*

Trujillo contends that the district court should have maintained supplemental jurisdiction over her state sexual assault claim against Martinez. But once again, Trujillo's only argument for maintaining jurisdiction is that the district court should not have granted summary judgment on her federal FHA claims. That argument fails because we affirm the district court's grant of summary judgment. We thus conclude that the district court did not abuse its discretion when declining supplemental jurisdiction.

AFFIRMED.[8]

---

[8] At the end of her opening brief, Trujillo asks for fees and costs under 42 U.S.C. § 3613, Federal Rule of Appellate Procedure 39, and Tenth Circuit Rule 39. Assuming for argument's sake that she properly raised her request and that fees and costs are available, we deny her request because she has not prevailed on appeal.